```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

RAYMOND JACKSON,                )
                                )
        Plaintiff,              )
                                )
    v.                          )       No. 4:06 CV 995 DDN
                                )
MICHAEL CALCATERRA, et al.,     )
                                )
        Defendants.             )

### **MEMORANDUM AND ORDER**

This matter is before the court on the motions of defendants for summary judgment (Docs. 57, 61). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 44.) The court heard oral arguments on the motions on April 24, 2008. The court grants the motion of defendant Bryan King, and denies the motion of defendants Michael Calcaterra and Gary Wurm, for the reasons set forth below.

### **I.   Pleadings**

Plaintiff Raymond Jackson brings this 42 U.S.C. § 1983 action, naming as defendants St. Louis Police Officer Michael Calcaterra, Officer Gary Wurm, and Sergeant Bryan King in their individual capacities. In his third amended complaint, plaintiff alleges that defendants falsely arrested him on a drug possession charge by falsely stating in their arrest warrant application that they found heroin on his person. Plaintiff asserts that as a result of the false arrest, his parole was revoked and he was forced to spend the following eighteen months in confinement. Plaintiff further asserts defendants understated the amount of money confiscated from him.

Plaintiff alleges defendants' conduct constitutes a violation of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights. He asserts four counts: falsifying reports and false arrest under 42 U.S.C. § 1983 and state law (Counts I and II); false arrest under state law (Count III); and malicious prosecution under state law (Count IV).

Defendants now move for summary judgment.  Defendants Wurm and Calcaterra move jointly.  Defendant King moves on his own behalf.  In support of their motions, defendants submitted, inter alia, the February 27, 2004 incident report, as well as excerpts from the parties' deposition transcripts and plaintiff's criminal trial.

## II.  Summary Judgment Standard

Summary judgment must be granted, when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Union Elec. Co. v. Southwestern Bell Tel. L.P., 378 F.3d 781, 785 (8th Cir. 2004).  The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences.  Union Elec. Co., 378 F.3d at 785.  A fact is "material," if it could affect the ultimate disposition of the case, and a factual dispute is "genuine," if there is substantial evidence to support a reasonable jury verdict in favor of the non-moving party. Die-Cutting Diversified, Inc. v. United National Ins. Co., 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial.  Celotex, 477 U.S. at 323.  Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead proffer admissible evidence that demonstrate a genuine issue of material fact.  Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004), cert. denied, 543 U.S. 956 (2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003).

## III.   Undisputed Facts

The undisputed proffer of evidence, viewed in the light most favorable to plaintiff, reveals the following.

On February 27, 2004, Saint Louis Police Officers Gary Wurm and Michael Calcaterra conducted a search for suspected narcotics at the residence of Ruby Bradford, 1717 Bacon Street, St. Louis, Missouri,

after receiving Ms. Bradford's written consent. (Ex. A, Wurm Dep. at 18-21; Ex. D, incident report at 6.) Sergeant Bryan King was present at the scene pursuant to a police department policy that requires a supervisor be present during consent searches. (Ex. A at 25-26.) King stood in the yard outside the residence while the officers' initial discussion with Ms. Bradford took place. (Ex. C at 29, 46.) King entered the home while the officers began their search and exited the home after a few minutes where he remained outside on the front porch. (Ex. C at 29-30, 46-47.)

Officers Wurm and Calcaterra went to the upstairs of the residence to search the rooms, at which time they discovered plaintiff. (Ex. A at 35.) Officer Calcaterra conducted a pat down search of plaintiff for weapons. Calcaterra testified at his deposition that he did not discover anything at that time that he believed was a weapon. (Ex. 3 at 37-38.) Officer Wurm witnessed Officer Calcaterra conduct the pat down search of plaintiff. (Id.) Officers Wurm and Calcaterra took plaintiff downstairs to the living room where the other occupants of the home had been gathered. (Id. at 38-40.) With the exception of Ms. Bradford, who was elderly, officers Wurm and Calcaterra handcuffed all of the occupants of the home and required them to wait while other officers searched the home. (Id. at 55.)

A wanted check on plaintiff returned an outstanding bench warrant for driving with a revoked license. (Ex. A at 53-54.)[1] Plaintiff was taken into custody and transported to the Central Patrol police station

---

[1] Evidence is proffered that Officer Calcaterra proceeded to search plaintiff incident to his arrest for the outstanding bench warrant and discovered a plastic vial in plaintiff's right front pocket which contained four capsules of suspected heroin. (Ex. A at 55, 59; Ex. D. at 6.) Officer Wurm testified at his deposition that he "believed" he saw Officer Calcaterra pull the plastic vial out of plaintiff's pants. (Ex. 3 at 56.)

Plaintiff testified at his deposition that while other officers were searching the residence, one of the officers came into the living room and held up what appeared to be a plastic bottle used for prescription medication. (Ex. 2 at 70.) Plaintiff further testified that the officer then asked if the bottle or its contents belonged to anyone in the room, but the officer did not receive an answer. (Id.)

for processing. After arriving at the station, plaintiff was booked and a full search was conducted. (Ex. A at 60.)

Officer Calcaterra completed an incident report, stating that plaintiff possessed a controlled substance and had an outstanding bench warrant for driving with a revoked license. (Ex. D.) Calcaterra indicated in the incident report that $63.63 in cash was found on plaintiff's person. (Ex. D at 6.) The seized money was placed in the area safe. (Id.) Officer Wurm filled out an evidence envelope which indicated that suspected heroin was seized from plaintiff. (Ex. 3 at 92.) Officer Calcaterra placed the suspected heroin in the evidence envelope and gave it to a laboratory clerk for analysis. (Ex. D at 6; Ex. B. at 111.) Plaintiff was released without bond pending application of a warrant on the drug possession charge. (Ex. B at 101.)

On February 29, 2004, officer Calcaterra applied for an arrest warrant against plaintiff for drug possession charge. (Ex. B at 99-102; Ex. D at 9.) The Circuit Attorney's office issued the warrant and plaintiff was arrested. (Ex. E at 17.) Plaintiff was subsequently acquitted by a jury on the drug possession charge. (Ex. C at 57.)

Sergeant King testified at his deposition in this action, without a proffer of contrary evidence, that with the exception of supervising the search of the Bradford residence, and reviewing and approving the incident report prepared by Calcaterra, he did not do any police work with respect to plaintiff's arrest. (Ex. C at 37-40.) King further testified that he did not witness the search of the second floor of the Bradford residence where plaintiff was found, that he did not witness the initial pat down search of plaintiff, and that he took no active role in plaintiff's booking. (Ex. C at 42, 48.)

### IV. Discussion

A. Defendant Bryan King's motion

In Counts I and II plaintiff asserts claims against defendant Bryan King for falsifying reports and false arrest under § 1983. Plaintiff alleges the February 27, 2004 incident report falsely states that heroin was found on his person when he was searched at the Bradford residence. He further asserts the report misstates the amount of money he

-4-

possessed, rather than the $400.00 he possessed at the time of his arrest,[2] and that following his acquittal he was given the amount shown on the police report rather than the actual amount which had been confiscated.   In support of his motion, King argues he is not liable under § 1983 because he performed only general supervisory responsibilities relating to plaintiff's arrest. He further argues that post-deprivation remedies bar plaintiff's due process claim for the confiscated money and that he is entitled to qualified immunity.

Section 1983 claims against public officials in their individual capacities "seek to impose personal liability upon a government official for actions he takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165 (1985). While "there is no concept of 'supervisory strict liability' in § 1983 actions," Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987), a supervisor may be held individually liable under § 1983 if he or she personally participates in a constitutional violation, or if the supervisor's failure to properly supervise or train the offending employee caused a deprivation of constitutional rights. Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996); Tilson v. Forrest City Police Dept., 28 F.3d 802, 806 (8th Cir. 1994), cert. denied, 514 U.S. 1004 (1995).

"The standard of liability for failure to supervise is demonstrated deliberate indifference or tacit authorization of the offensive acts." Tilson, 28 F.3d at 807 (citation and internal punctuation omitted). Deliberate indifference mandates that the plaintiffs show the official "knows of and disregards an excessive risk to . . . health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The standard of liability for failure to train is deliberate indifference. Tilson, 28 F.3d at 807 (citation omitted). Deliberate indifference may be established by demonstrating a failure to train

---

[2]Plaintiff testified at his deposition that about $340.00 was taken from him.  (Jackson Dep. at 79.)

-5-

officers in a specific area where there is an obvious need for training to avoid violations of citizens' constitutional rights. Thelma D. by and through Delores A. v. Board of Educ., City of St. Louis, 934 F.2d 929, 934 (8th Cir. 1991). Thus, to adequately plead a claim of supervisory liability under § 1983, a plaintiff must allege that a supervisor was personally involved in or had direct responsibility for the constitutional violation, or that the supervisor actually knew of and was deliberately indifferent to or tacitly authorized the unconstitutional acts. See McDowell v. Jones, 990 F.2d 433, 434-35 (8th Cir. 1993) (citations omitted).

Here plaintiff does not allege that Sergeant King personally participated in any constitutional violations. Moreover, plaintiff has not produced any evidence that King personally participated in any alleged wrongdoing. The evidence shows that Sergeant King did not write the police report or warrant application, nor did he arrest plaintiff. King, acting as officers Calcaterra and Wurm's supervisor at the time of plaintiff's arrest, merely reviewed and by his signature approved the police report and warrant application. King also approved plaintiff's arrest and the confiscation of plaintiff's money under the seizure forfeiture rules.

The court concludes that the undisputed proffered evidence demonstrates that defendant King's conduct did not deprive plaintiff of his constitutional rights in connection with the preparation of plaintiff's police report and arrest. Therefore, King is entitled to summary judgment to the extent plaintiff is claiming King personally participated in a constitutional violation or failed to supervise, train or control his subordinate police officers.

Defendant King also argues he is entitled to qualified immunity. Under the qualified immunity principle, governmental officials are immune from suit for civil damages unless their conduct is unreasonable in light of clearly established law. Anderson v. Creighton, 483 U.S. 635, 639 (1987). In the qualified immunity context, "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004).

"To determine whether an official is entitled to qualified immunity, the court asks two questions: (1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted. See Saucier v. Katz, 533 U.S. 194, 201 (2001); Wilson v. Lawrence County, Mo., 260 F.3d 946, 951 (8th Cir. 2001) (citing Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir. 2001))." "If the answer to this first inquiry is no, courts do not delve further into the qualified immunity inquiry. Id. Instead, the defendant is entitled to qualified immunity, and the suit is not permitted to proceed. See Saucier, 533 U.S. at 202.

Plaintiff claims that King approved the police report and warrant application, both of which were written by Calcaterra, and approved plaintiff's arrest and seizure of his money. As discussed above, because plaintiff brings suit against plaintiff in his supervisory capacity, plaintiff must present some evidence that King was either personally involved in or aware of the alleged wrongdoing in order to hold King liable for constitutional violations. See McDowell v. Jones, 990 F.2d 433, 434-35 (8th Cir. 1993) (citations omitted). Plaintiff has presented no evidence that King violated his constitutional rights, and therefore, the court's inquiry need go no further. Accordingly, the court concludes that King is entitled to qualified immunity on plaintiff's constitutional claims.

To the extent plaintiff asserts a § 1983 due process claim for deprivation of his money, this claim must be dismissed because plaintiff has an adequate post-deprivation remedy available. "Under the Parratt/Hudson doctrine, a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy." Putman v. Smith, 98 F.3d 1093, 1095 (8th Cir. 1996). Here, Missouri law provides plaintiff with the post-deprivation remedy of replevin. See Clark v. Kansas City Missouri Sch. Dist., 375 F.3d 698, 703 (8th Cir. 2004); Mo. R. Civ. P. 99.01. Accordingly, the

court grants summary judgment to defendant King on plaintiff's claim that King confiscated his money without due process of law.

In Counts III and IV plaintiff asserts state law claims for false arrest and malicious prosecution. Under Missouri law, the elements of an action for false arrest are "the confinement, without legal justification, by the wrongdoer of the person wronged," against the will of the person confined. Day v. Wells Fargo Guard Service Co., 711 S.W.2d 503, 504-05 (Mo. 1986); Rustici v. Weidemeyer, 673 S.W.2d 762, 767 (Mo. 1984). A defendant may be liable for false arrest if he actually arrests or restrains a person, or causes the person's arrest or restraint by another. See, e.g., Smith v. Allied Supermarkets, Inc., 524 S.W.3d 848 (Mo. 1975); Bly v. Skaggs Drug Centers, Inc., 562 S.W.2d 723, 727 (Mo. App. 1978).

A suit for false arrest or false imprisonment is appropriate where the aggrieved person is arrested without legal process. In contrast, where the process on which the arrest was made is regular on its face, but was sued out maliciously and without probable cause, the appropriate remedy is an action for malicious prosecution. Thomas v. M R A, 713 S.W.2d 570, 574 (Mo. App. 1986) (citing Coffman v. Shell Petroleum Corp., 71 S.W.2d 97, 98 (Mo. 1934)).

The elements for a cause of action for malicious prosecution in Missouri are: (1) the commencement of a prosecution against the plaintiff; (2) instigation of that prosecution by the defendant; (3) termination of the prosecution in plaintiff's favor; (4) the lack of probable cause for the prosecution; (5) malice on the part of the defendant; and (6) damage to the plaintiff. Sanders v. Daniel Int'l Corp., 682 S.W.2d 803, 807 (Mo. 1984). As Missouri courts do not favor this cause of action, strict proof of all six elements is required. Id. at 806.

King contends he is entitled to official immunity on plaintiff's state law claims and, alternatively, that the public duty doctrine bars these claims. In Missouri, the official immunity doctrine holds that a public official is not civilly liable to members of the public for negligence strictly related to the public official's performance of discretionary duties. Hawkins v. City of Farmington, 189 F.3d 695, 703

(8th Cir. 1999) (citing Green v. Denison, 738 S.W.2d 861, 865 (Mo. 1987)).  Missouri law clearly holds that police officers are public officials within the meaning of the official immunity doctrine.  Id.

"Discretionary conduct involves 'the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued,' whereas ministerial conduct involves an act 'of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed.' Rustici v. Weidemeyer, 673 S.W.2d 762, 769 (Mo. 1984).  As a general rule, official immunity applies to all discretionary acts except those done in bad faith or with malice.  State ex. rel. Twiehaus v. Adolf, 706 S.W.2d 443, 446 (Mo. 1986).

The court concludes that defendant King is protected by official immunity because he exercised discretionary judgment in approving the arrest of plaintiff, the police report, the warrant application, and the seizure of plaintiff's money.  Moreover, plaintiff has presented no evidence whatsoever that King acted in bad faith or with malice.

On the merits, defendant King argues plaintiff's malicious prosecution claim fails because plaintiff has not presented any evidence that King acted with malice.  The court agrees.  A defending party in a malicious prosecution action may establish a right to summary judgment by showing facts which negate any one of the plaintiff's elements. Thompson v. Wal-Mart Stores, Inc., 890 S.W.2d 780, 782 (Mo. App. 1995). Here plaintiff cannot prove malice on the part of King.  "Malice" exists for a malicious prosecution action if a defendant acted primarily for a purpose other than that of bringing an offender to justice and acted without reasonable grounds.  Grimes v. Bagwell, 837 S.W.2d 554, 558 (Mo. App. 1992) (quoting Sanders v. Daniel Int'l Corp., 682 S.W.2d 803, 814 n. 4 (Mo. banc 1984)).  The proffered evidence unequivocally demonstrates that King did not instigate the criminal prosecution with malice and that he acted with probable cause.  Accordingly, as plaintiff cannot establish a mandatory element of his state law claim for

malicious prosecution, defendant King is entitled to summary judgment on this claim. See Thompson, 890 S.W.2d at 782.

B. Defendants Wurm and Calcaterra's motion

Plaintiff asserts the same four claims against officers Wurm and Calcaterra as he does against Sergeant King. In their motion, both Wurm and Calcaterra move for summary judgment on plaintiff's state law claims. However, only defendant Wurm moves for summary judgment on plaintiff's § 1983 claims, and therefore, plaintiff's § 1983 claims for false arrest and falsifying reports against Calcaterra remain. [3]

Officer Wurm first argues that to the extent plaintiff is claiming unlawful arrest and detention under the Fifth and Fourteenth Amendments, these claims must be dismissed. Wurm contends this claim must be analyzed only under the objective reasonableness standard of the Fourth Amendment. The Fourteenth Amendment guarantees substantive due process, which prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty. Moran v. Clarke, 296 F.3d 638 (8th Cir. 2002) quoting Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc). To that end, the Fourteenth Amendment prohibits conduct that is so outrageous that it shocks the conscience or otherwise offends judicial notions of

---

[3] A § 1983 false arrest or false imprisonment claim relies on a substantive fourth amendment right to be free from unreasonable searches and seizures. Hannah v. City of Overland, Mo., 795 F.2d 1385, 1389 (8th Cir. 1986)(a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments).

The elements required to prove false arrest and false imprisonment are identical. Both occur when there is confinement without legal justification by the wrongdoer of the person involved. Hannah, 795 F.2d 1385. See also Desai, 864 S.W.2d at 836. The elements of false imprisonment or false arrest are: (1) detention or restraint of the plaintiff against his will; and (2) the unlawfulness of the detention or restraint; i.e., that the plaintiff was detained or restrained without probable cause. Id. A police officer "who arrests someone with probable cause is not liable for false arrest [or false imprisonment] simply because the innocence of the suspect is later proved." Hannah, 795 F.2d at 1389 (quoting Pierson v. Ray, 386 U.S. 547, 555 (1967)).

fairness, [or is] offensive to human dignity." Id. (quoting Weimer v. Amen, 870 F.2d 1400, 1405 (8th Cir. 1989)) (alteration in original).

Plaintiff Jackson asserts that defendants manufactured evidence against him by causing him to be arrested and prosecuted even though they knew that no drugs had been found on him.[4] If plaintiff's allegations are accepted as true, a jury could find that defendants acted with deliberate indifference to plaintiff's constitutional rights by causing him to be arrested and prosecuted despite knowing that no drugs were found on him. See e.g., Moran v. Clarke, 296 F.3d 638, 647 (8th Cir. 2002) (plaintiff presented sufficient evidence for due process claim of police conspiracy to manufacture, and the manufacture of, false evidence to withstand summary judgment). Therefore, the court will deny defendants' motion as to plaintiff's unlawful arrest claim to the extent he brings it under the Fourteenth Amendment.

Wurm next argues plaintiff's § 1983 claims for falsifying reports and false arrest should be dismissed on the merits because he was not sufficiently involved in the preparation and presentation of the application for plaintiff's arrest warrant. Wurm notes that it was Calcaterra who wrote the police report and the statement on the application for plaintiff's arrest warrant for possession of controlled substance was issued, and there is no evidence that he participated in the preparation of those documents.

The plaintiff in a § 1983 action must show that a defendant deprived him of a constitutional right while acting under color of state law. Roudybush v. Zabel, 813 F.2d 173, 176 (8th Cir. 1987) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 150 (1970)). "A defendant will not be held liable under § 1983 unless he was personally involved in causing the deprivation of a constitutional right." Triplett v. Azordegan, 570 F.2d 819, 823 (8th Cir. 1978).

Defendants assert that Wurm was present for and witnessed the post-arrest search of plaintiff during which heroin assertedly was found on plaintiff and that Wurm recorded on the evidence bag that a container of possible drug contraband was seized from plaintiff. Therefore,

---

[4] See footnote 1.

-11-

defendant Wurm would have known whether or not suspected heroin was actually found on plaintiff.  Because a jury must determine whether suspected heroin was actually found on plaintiff during the post-arrest search before Wurm's liability can be determined, the court concludes summary judgment must be denied.

Defendant Wurm also argues he is entitled to qualified immunity on plaintiff's § 1983 claims.  In ruling on a motion for summary judgment based on qualified immunity, the initial inquiry is whether a constitutional right would have been violated on the facts alleged, for if no right would have been violated, there is no need for further inquiry into immunity.  If a violation could be made out on a favorable view of the parties' submissions, however, the next step is whether the right was clearly established.  This inquiry must be undertaken in light of the case's specific context, not as a broad general proposition.  The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted.  Saucier v. Katz, 533 U.S. 194 (2001).

As to plaintiff's false arrest claim, as stated above, a reasonable jury could find on the facts proffered that the officers did not in fact seize suspected heroin from plaintiff and that defendant Wurm is liable for the false arrest of plaintiff.  The second step is also satisfied as the Fourth Amendment right to be free from arrest without probable cause is clearly established.  See Womack v. City of Bellefontaine Neighbors, 193 F.3d 1028, 1030-31 (8th Cir. 1999) (citing Kuehl v. Burtis, 173 F.3d 646, 649 (8th Cir. 1999)).  Therefore, the court concludes defendant Wurm is not entitled to qualified immunity at this time.

Defendants Wurm and Calcaterra next argue Missouri's public duty doctrine bars plaintiff's state law claims against them.  The public duty doctrine shields public officers, and the governmental bodies that employ them, from liability for injuries or damages resulting from the officers' breach of a duty owed to the general public, and does not shield public officials from liability resulting from the breach of a duty owed to particular individuals.  Kinder v. Missouri Dept. of Corr.,

43 S.W.3d 369, 372 (Mo. App. 2001); see also Green v. Denison, 738 S.W.2d 861, 865 (Mo. 1987).

Here plaintiff is not alleging that Wurm and Calcaterra failed to carry out a duty to the general public.  Rather, he alleges defendants acted intentionally in causing his arrest and prosecution, which "go beyond the protection of the public duty doctrine." White v. Int'l Ass'n of Firefighters, 738 S.W.2d 933, 938 (Mo. App. 1984). Accordingly, the factual disputes in this case prevent the court from granting summary judgment with respect to plaintiff's state law claims.

Defendants Wurm and Calcaterra finally argue they are entitled to official immunity.  As addressed above, as a general rule, official immunity applies to all discretionary acts except those done in bad faith or with malice. State ex. rel. Twiehaus v. Adolf, 706 S.W.2d 443, 446 (Mo. 1986). The record of proffered evidence indicates that there are material facts in dispute as to whether the arrest and prosecution of plaintiff were lawful and, if not lawful, whether defendants Wurm and Calcaterra acted intentionally and with malice.  Therefore, whether official immunity applies is a question of fact which must be decided by a jury. See Shell v. Ebker, 2006 WL 1026982, *11 (E.D. Mo. 2006); Blue v. Harrah's North Kansas City, LLC, 170 S.W.3d 466, 479-80 (Mo. App. 2005).

For all of the above reasons,

**IT IS HEREBY ORDERED** that the motion of defendant Bryan King for summary judgment (Doc. 57) is sustained.  Plaintiff's claims against defendant King are dismissed with prejudice.

**IT IS FURTHER ORDERED** that the motion of defendants Wurm and Calcaterra for summary judgment (Doc. 61) is denied.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on May 1, 2008.